RECEIVED
IN LAKE CHARLES, LA.

JUL -7 2011

TONY R. MOORE, CLERK
BY _____
         DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **DOCKET NO. 2: 10-CV-01252** |
| VS. | : | **JUDGE MINALDI** |
| UNITED SERVICES AUTOMOBILE ASSOCIATION ("USAA"), PROGRESSIVE PALOVERDE INSURANCE COMPANY AND AIMEE FERNANDEZ | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Presently before the court are cross-motions for summary judgment. A Motion for Summary Judgment (Rec. Doc. 29) was filed by the United States Automobile Association ("USAA") asking that this court find the "Made Whole" doctrine applicable to the case at bar. The United States filed an Opposition (Rec. Doc. 37) and USAA filed a Reply (Rec. Doc. 38).

The plaintiff, the United States, filed a Motion for Summary Judgment (Rec. Doc. 31) asking that this court find the "Made Whole" doctrine not applicable to the case at bar. USAA and SPC Fernandez filed an Oppositions (Rec. Docs. 39 and 40, respectively). The United States filed a Reply (Rec. Doc. 41).

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially

responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party. . . ." *Id.*

## FACTS AND PROCEDURAL HISTORY

On or about August 9, 2007, Specialist Aimee Fernandez ( "SPC Fernandez") stopped her 2000 Chevrolet Malibu at the stop sign at the intersection of Alabama Avenue and Bell Richard Avenue on the Fort Polk Military Installation. Specialist Brian  P. Gaubatz ( "SPC Gaubatz") approached this intersection and failed to notice SPC Fernandez's vehicle and/or stop his 2006 Pontiac Montana, striking SPC Fernandez's vehicle in the rear. SPC Gaubatz had permission from the owner, Michael Haley, to drive the 2006 Pontiac Montana, a vehicle which was insured with United Services Automobile Association (hereinafter "USAA").[1]

At the time of the accident, SPC Fernandez was an active duty Soldier in the United States

---

[1]  See Doc. 31, United States' Motion for Summary Judgment, United States Exhibit A &I.

2

Army.[2] Because of the collision, the United States furnished and/or paid for medical care for SPC

Fernandez through Bayne Jones Army Community Hospital, Brook Army Medical Center, and

TRICARE in the amount of $11,001.00.[3] Furthermore, because of the collision, SPC Fernandez was

unable to perform her duties as an employee of the United States for six days and the United States

incurred $329.16 in lost wages.[4] Counsel for SPC Fernandez deposited the $15,630.51 claimed by

the United States[5] into the registry of the court.[6]

On September 17, 2007 and April 16, 2008, the Claims Division sent USAA a certified letter

informing them of the United States's independent right under the Federal Medical Care Recovery

Act ("FMRCA"), 42 U.S.C. § 2651 *et. seq.* and 10 U.S.C. § 1095 to recover the cost of SPC

Fernandez's medical care[7] and lost wages related to the August 9, 2007 accident.[8] On or around July

---

[2] As a result, she was entitled to receive healthcare under The Military Healthcare System established pursuant to 10 USC 1079 et. seq.

[3] In its complaint, the United States maintained that it "has furnished and/or paid for medical care in the amount of $15,301.35." (Complaint, p. 3). However, the United States avers that, as of May 2, 2011, TRICARE's medical lien was lowered to $5,655.65 because TRICARE removed $4,300.35 from its original lien due to double billing or unrelated medical care.  See also United States Exhibit B.

[4] See Doc. 31, United States' Motion for Summary Judgment, United States Exhibit C.

[5] Complaint, ¶ VII.

[6] This sum was deposited in the registry of the court in case no. 2:10-CV-1247, a suit filed by SPC Fernandez as a Complaint in Interpleader or Concursus.  At a conference with Magistrate Judge Kay on December 14, 2010 (Rec. Doc. 12), counsel for SPC Fernandez indicated the he would answer in this suit (10-CV-1252), ask the Clerk to transfer the funds on deposit from 10-CV-1247 to 12-CV-1252, and the dismiss 12-CV-1247 without prejudice, effectively consolidating the matters.  SPC Fernandez has since filed an answer in this suit, but no further actions have been taken in 10-CV-1252.

[7] The Complaint (¶¶ V-VII) asks for specific dollar amounts of damages for medical expenses and lost wages.  These paragraphs do not mention future medical expenses. ¶ XIII,

3

24, 2008, USAA and SPC Fernandez settled SPC Fernandez's injury claim for $10,000.[9]  SPC Fernandez also settled with Progressive Paloverde Insurance Company ("Progressive") for the uninsured/underinsured policy limits of $25,000.[10]

The Complaint mentions the amount spent for medical expenses and lost wages on behalf of SPC Fernandez as a result of this accident, however, the United States is seeking to recover the entire $35,000 paid to SPC Fernandez ($10,000 by USAA and $25,000 by Progressive).[11]

Law

The primary issue before the court in the motion for Summary judgment filed by USAA is whether the "make whole"doctrine[12] applies to allow SPC Fernandez to be fully compensated for her injuries prior to any recovery being had by the United States for the reasonable value of medical care expenses and lost wages paid to SPC Fernandez as a result of the  August 9, 2007, accident.[13]  This

however, request "the reasonable value of medical care furnished and/or paid for by the United States (both past and future)."

[8]  See Doc. 31, United States' Motion for Summary Judgment, United States Exhibit G.

[9]  See Doc. 31, United States' Motion for Summary Judgment, United States Exhibit J.

[10]  On August 6, 2010, the United States brought this action under the FMRCA "to recover insurance proceeds which the injured soldier and her attorney received for expenses incurred by the United States; and to recover insurance benefits owed to the United States." (Complaint, Introductory ¶).  USAA, Progressive and SPC Fernandez are named as defendants.

[11]  Complaint ¶¶ XIX-XX.

[12]  The "Make Whole Doctrine" is an insurance principle which mandates that, in the absence of a contrary agreement, an insurance company may not enforce its subrogation rights until the insured has been fully compensated for her injuries-"made whole." It is considered a rule of interpretation or gap filler which becomes significant only when contracts fail to clearly address the issue.

[13]  The court decided previously that the United States had a right to bring this claim. Mem. Order Rec. Doc. 16.  This is not at issue in this motion.

4

is a question of law.

USAA submits that SPC Fernandez has a right to be made whole before the United States has any right to recover any funds from USAA. USAA also submits that to the extent the United States claims that it is a third party beneficiary under USAA policy, this claim should also be rejected.

The Federal Medical Care Recovery Act ("FMCRA"), 42 U.S.C. § 2651, grants the United States a substantive right to recover from third party tortfeasors[14] the reasonable value of the cost of medical services rendered to injured veterans.[15] The Act provides several methods by which the United States may vindicate its substantive right. Under section 2651(b), the United States either can intervene in the action by the veteran against the tortfeasor or, alternatively, institute an independent

---

[14] SPC Gaubatz is the third party tortfeasor in this case.

[15]  42 U.S.C. § 2651 (1982) provides in part:(a) In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease ... under circumstances creating a tort liability upon some third person ... to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished.

(b) The United States may, to enforce such right, (1) intervene or join in any action or proceeding brought by the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, against the third person who is liable for the injury or disease; or (2) if such action or proceeding is not commenced within six months after the first day in which care and treatment is furnished by the United States in connection with the injury or disease involved, institute and prosecute legal proceedings against the third person who is liable for the injury or disease, in a State or Federal court, either alone (in its own name or in the name of the injured person, his guardian, personal representative, estate, dependents, or survivors) or in conjunction with the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors.

5

action against the tortfeasor if the veteran does not do so within six months of the injury. Most significant for this action, in a more general provision, the Act provides that "as to this right [the United States shall] be subrogated to any right or claim" of the injured veteran. 42 U.S.C. § 2651(a).

Subrogation is a broad equitable remedy long used by courts to balance the interests of adverse parties and prevent unjust enrichment.[16] In affording the United States this broad equitable remedy, the FMCRA creates the basis for the United States's present action against SPC Fernandez, USAA and Progressive. The FMCRA clearly provides the motivation for SPC Fernandez's attorney to set aside a portion of the settlement pending appropriate settlement with the United States. The United States's claim to this fund derives from its being subrogated to SPC Fernandez's claim. 42 U.S.C §2652(c) provides the following regarding the unaffected rights of the injured party to fully recover before any subrogation rights may be exercised under 42 U.S.C. §2651:

(c) Damages recoverable for personal injury unaffected

No action taken by the United States in connection with the rights afforded under this legislation shall operate to deny to the injured person the recovery for that portion of his damage not covered hereunder.

This is the language of §2652(c) that provides the basis for the "Made Whole" doctrine.

Additionally, 31 U.S.C. § 3713, governing priority of United States claims for recovery of benefits, provides the following:

(a)(1) A claim of the United States shall be paid first when-

(A) a person indebted to the United States is insolvent and-

(I) the debtor without enough property to pay all debts makes a voluntary assignment

---

[16] *See, e.g., New York Title and Mortgage Co. v. First National Bank of Kansas City,* 51 F.2d 485 (8th Cir.), *cert. denied,* 284 U.S. 676, 52 S.Ct. 131, 76 L.Ed. 572 (1931); *see also* D. Dobbs, *Remedies,* 250-52 (1973).

of property....

Case law addressing the issue of whether SPC Fernandez must first be "made whole" prior to United States recovery is scarce. As noted by USAA, the only case to directly address this issue is *Allen v. United States*.[17]  In *Allen,*  the court specifically addressed the issues of (1) whether an insurance carrier with limits insufficient to cover all of the plaintiff's damages was considered an "insolvent" debtor within the meaning of § 3713(a)(1)(A)(I); and (2) whether under § 2652(c) a plaintiff is entitled to be made whole before the United States can recover payments pursuant Title 42.

In denying the United States's Motion for Summary Judgment that it was entitled to settlement proceeds prior to, and in derogation of, the rights of the injured party, the court stated the following:

> ...The United States contends that if the claims arising out of the accident exceed the USAA policy limits, USAA is an "insolvent" party as referenced in § 3713.
>
> There is no basis for the United States's position. USAA is not the debtor in this case. Col. Allen is, and it is to his solvency (actually, his estate's) to which the statute applies. Yet the United States has made no claim against his estate, and has failed even to assert, let alone demonstrate, that the estate is insolvent. USAA, by contrast, simply holds, or held, an asset of the estate. It is Col. Allen's indemnitor up to the maximums stipulated in the policy. Far from being unable to discharge its obligation, USAA has paid its obligation in full by depositing it with the Clerk of Court. (Internal citations omitted).

668 F. Supp. at 1257-1258.

The court found that USAA was neither a debtor, nor insolvent, within the meaning of Title 31, and rejected the United States's arguments that it should be paid first on these grounds. In addressing the issue of whether a Plaintiff is entitled to be made whole before the United States can

---

[17]   668 F.Supp. 1242, 1257-1258 (W.D. Wis. 1987)

recover payments pursuant Title 42, the court engaged in an in-depth analysis, first finding that the provisions of § 2651 speak in terms of subrogation, and not reimbursement.[18] Finding that, by its plain language, § 2651 provides for a right of recovery in favor of the United States based upon subrogation, the court then explained the application of § 2652(c) as follows:

> There is another flaw in the United States's contention. The FMCRA itself speaks to the priority issue....
>
> Subsection (c) was not part of the original bill. The purpose of adding the provision, according to the House Committee Report, was to make clear Congress' intent that the United States's right under the Act "would be exercised without affecting the rights of that individual [the victim] to recover for losses and damages peculiar to him and in which the United States has no direct interests." H.R.Rep. No. 1534, 87th Cong., 2d Sess. 2 (1962). See also S.Rep. No. 1945,*1258 87th Cong., 2d Sess., *reprinted in* 1962 U.S.Code Cong. & Admin.News 2637, 2642 (United States's right shall not impair right of injured person to recover damages other than cost of medical care furnished by United States).
>
> In light of the language of the statute and its legislative history, I am persuaded that § 2652(c) requires that the injured party be made whole before the United States may be reimbursed under the Act. The language of the statute is unequivocal: "No action ... shall operate to deny ... recovery ..." It is difficult to see how the recognition of a United States priority, or even a pro rata participation, can be considered anything other than a denial of recovery. Thus, under my reading, the statute appears to afford the injured person priority should the tortfeasor be unable to satisfy both of their claims.

668 F.Supp. at 1257 -1258.

The United States asserts that the holding of *Allen* should not be adopted by this Court for several reasons. First, the United States argues that the plain language of 42 U.S.C. § 2651 and Fifth Circuit precedent establish an independent cause of action against USAA, and there has been no subrogation of the United States' independent right to seek recovery from USAA. It is undisputed that § 2651(a) makes it clear that the United States does have an independent right of action to seek

---

[18]  668 F. Supp. at 1256.

recovery from USAA.[19]

Next, the United States argues that the rationale of *Allen* should not be adopted by this court because Congress inserted § 2652(c) to clarify the new right granted to the United States pursuant to §2651(d) which did not federally preempt the plaintiff's right to file a separate Cause of Action against the tortfeasor. In Allen, the court states:

> "Subsection (c) was not part of the original [FMCRA] bill. The purpose of adding the provision, according to the House Committee Report, was to make clear Congress' intent that the United States's right under the Act would be exercised without affecting the rights of that individual [the victim] to recover for losses and damages peculiar to him and in which the United States has no direct interest."[20]

The court in Allen used the above legislative history to determine any attempt by the United States to recover the cost of medical care before the plaintiff is made whole effectively operates to deny plaintiff's recovery.

The United States argues that while the United States may intervene in an existing action or file a separate cause of action six months after the start date of the medical treatment related to the

---

[19]  In addition, Section 2651(d) provides:

The United States may, to enforce a right under subsections (a), (b), and (c) of this section ... institute and prosecute legal proceedings against the third person who is liable for the injury or disease or the insurance carrier or other entity responsible for the payment or reimbursement of medical expenses or lost pay, in a State or Federal court, either alone (in its own name or in the name of the injured person, his guardian, personal representative, estate, dependents, or survivors) or in conjunction with the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors.

42 U.S.C. § 2651(d).

[20]  H.R.Rep. No.1534, 87th Cong. 2d Sess. 2 (1962). See also S. Rep. No. 1945, *1258, 87th Cong., 2d Sess., reprinted in 1962 U.S.Code Cong. & Admin. News 2637, 2642 (United States's right shall not impair right of injured person to recover damages other than cost of medical care furnished by United States)."

incident pursuant to §2651(d), §2652(c) prohibits the United States's cause of action to recover the reasonable cost of medical care and lost wages from barring the injured party's separate and distinct cause of action to recover any other damages. If the injured party does not file a cause of action within six months from the start of medical treatment and the United States exercises its right to file an independent cause of action pursuant to § 2651(d), § 2652(c) clearly permits the injured party to file its own separate cause of action in the another court with proper jurisdiction and venue.

This is an interesting argument by the United States as the United States did not intervene in the plaintiff's suit, nor did the United States file a separate cause of action six months after the start date of the medical treatment ( August 9, 2007) related to the incident pursuant to §2651(d). There is jurisprudence, however, holding that the specific interest and right conferred upon the United States by statute, providing the remedies and procedures for enforcing the right, are not to be narrowly construed so as to prevent effectuation of the policy declared by Congress.[21] It is clear that Congress intended that the United States should be entitled to reimbursement of medical expenses furnished to an injured service member.

The third ground upon which the United States argues that this court should not adopt the rationale of *Allen* is because the United States asserts that federal law preempts the Made Whole Doctrine.

The Fifth Circuit applied federal law to determine the Made Whole Doctrine did not apply to another federal statute, the Employee Retirement Income Security Act of 1974 ("ERISA"), citing

---

[21] *See United States v. York,* 398 F.2d 582 (6th Cir. 1968); *United States v. Merrigan,* 389 F.2d 21 (3rd Cir. 1968); *United States v. Wittrock,* 268 F.Supp. 325 (E.D. Pa. 1967).

the plain language of the ERISA plan demanded reimbursement on a dollar for  dollar basis.[22] The

Fifth Circuit correctly applied *Chevron*,[23] I which the United States Supreme Court held that when

an agency has issued an interpretation of a statute it is entitled to administer, the courts may not

conduct a de novo review. In *Chevron*, the United States Supreme Court stated :

> If the intent of Congress is clear, the court, as well as the agency administering the
> statute, must give effect to the unambiguously expressed intent of Congress. If the
> statute is silent or ambiguous with respect to the specific issue, the court must
> determine whether or not the agency's answer is based on a permissible construction
> of the statute. The court need not conclude that the agency construction was the only
> one it permissibly could have adopted to uphold the construction, or even the reading
> the court would have reached if the question initially had arisen in a judicial
> proceeding.

The United States argues that, like with ERISA, Congress enacted FMCRA to afford the

United States a direct, independent cause of action, which is "subrogated" only to the extent that it

is subject to any state substantive defenses which would negate the requirement that the injury arise

"under circumstances creating tort liability upon some third person" as opined in the Fifth Circuit

in *United States  v. Fort Benning Rifle & Pistol Club*, 387 F.2d 884, 886-87 (5th Cir. 1967) and

*United States v. Haynes*, 445 F.2d 907, 909 (5th Cir. 1971). Therefore, the FMCRA preempts

Louisiana's Made Whole Doctrine[24]  and permits the United States to recover the reasonable cost

of SPC Fernandez's medical bills and lost wages as a result of the collision.

ERISA does not contain provisions like §§ 2651 and 3713 of the FMCRA. Since *Erie R. Co.*

---

[22] *Sunbeam-Oster Co. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1374 (5th Cir.1996).

[23] *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984).

[24] The Fifth Circuit also made clear its apprehension toward adopting the "Made Whole" doctrine as the circuit's default rule for priority of recovery. *See Sunbeam-Oster at 1378.*

*v. Tompkins*,[25] there have been no federal common law torts. It cannot be doubted that, in the FMCRA, Congress intended to give and did give to the United States, if a tort had been committed, an independent right of recovery against the tortfeasor and that the United States is not merely subrogated to the injured party's claim. It was the intention of Congress to compel the United States to maintain its suit through the tort law of the respective States and if state law did not create an actionable tort claim, such as no-fault states, recovery could not be had by the United States.

The Congressional reference is to the substantive law of the States, which here must be determined to be that of Louisiana. The reference is to *substantive* law *not procedural*. The language of the statute, particularly the phrase of 42 U.S.C. § 2651(a), " *under circumstances creating a tort liability upon some third person*," (emphasis added) must be construed as a reference to the tort law of a State or territory.[26] It follows that Congress was not looking to a nonexistent federal tort but to the tort laws of the States.[27] Therefore, state law is not preempted.

This court has considered, but is not bound by the holding in *Allen*. This is an issue of first impression for this court. Although USAA submits that *Allen* is factually indistinguishable, there are differences between the cases. In *Allen*, USAA deposited the funds into the registry of the court. In the case at bar, USAA settled with SPC Fernandez, having received notice of the United States's lien. SPC Fernandez's attorney placed the funds into the registry of the court. While USAA argues that this suit subjects it to a double payment of the United States's lien because it tendered policy limits to SPC Fernandez, the United States argues that its recovery cannot be denied by the injured

---

[25] 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

[26] *United States v. Moore,* 469 F.2d 788, 799 ( 3rd Cir. 1972).

[27] *Id.* At 799.

12

party giving a release to the tortfeasor[28] and such payments were rendered at the peril of the insurance company.[29] In effect, because USAA and Progressive settled with SPC Fernandez, knowing that the United States had an existing lien for medical expenses and lost wages, the United States argues that forcing these companies to pay the entire $35,000 again (to the United States this time) is not a "double payment" so much as a justified punishment for not reimbursing the United States directly.[30] This court is not persuaded that, under the facts of this case, ordering such a double payment is justified.

The United States also has an independent cause of action against Progressive. Title 10 of the United States Code, Section 1095(e)(1) authorizes the United States to institute and prosecute legal proceedings against a third-party payer to enforce a right of the United States under 10 U.S.C. §1095.[31] At the time of the accident, SPC Fernandez had an Underinsured/Uninsured Motorist

---

[28] *United States v. Greene*, 266 F.Supp. 976 (N.D.Ill.1967); *United States v. Winter*, 275 F.Supp. 895 (E.D.Penn.1967); *United States v. Guinn*, 259 F.Supp. 771 (D.N.J.1966

[29] See *United States v. Guinn*, 259 F.Supp. 771 (D.N.J. 1966); *United States. v. Bartholomew*, 266 F.Supp. 213 (D.C.Okl. 1967).

[30] Plaintiffs' attorneys settle cases every day with amounts being owed for medical expenses incurred. The attorney, by placing the funds into his trust account, protects the creditor and disburses payment from the settlement proceeds. This is routinely done and creditors usually do not ask for what amounts to punitive sanctions because the creditor is not paid directly by the insurance company versus the plaintiff after settlement.

[31] Section 1095(b) specifically provides:
"No provision of any insurance, medical service, or health plan contract or agreement having the effect of excluding from coverage or limiting payment of charges for certain care shall operate to prevent collection by the United States under subsection (a) if that care is provided (1) through a facility of the uniformed services; (2) directly or indirectly by a governmental entity; (3) to an individual who has no obligation to pay for that care or for whom no other person has a legal obligation to pay; or (4) by a provider with which the third party payer has no participation agreement."

Coverage Policy with Progressive Paloverde Insurance Company with a maximum limit of $25,000.

While it is clear that the United States has an independent cause of action against USAA and Progressive under the statute, the disputed sum has been deposited in the registry of the court by SPC Fernandez. The United States's position that USAA (and Progressive) should be forced to pay twice is certainly not an equitable solution. In the Fifth Circuit, the United States's independent right is only subrogated to the extent that it is subject to state substantive defenses that would negate state tort liability.[32] Since the Made Whole doctrine does not operate to create or negate SPC Gaubatz's tort liability to SPC Fernandez, the Made Whole doctrine does not affect the ability of the United States to recover from USAA.

The United States argues that SPC Fernandez was unjustly enriched when she accepted $25,000 from Progressive and $10,000 from USAA despite the United States holding a lien under the FMCRA. Louisiana Civil Code Article 2298 provides that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." La. C.C. Art. 2298. Yet, SPC Fernandez filed a Complaint in Interpleader or Concursus and deposited the amount of the claimed medical and lost wages expenses into the registry of the court. She never received those funds. They were paid by the insurers to the plaintiff and her attorney. SPC Fernandez's attorney placed them into his trust account until he deposited them into the registry of the court. Therefore, there was no unjust enrichment.

The question of apportionment of funds under this statute has no Fifth Circuit precedent. In an interesting case, *Commercial Union Ins. Co. v. United States,* 999 F.2d 581(C.A.D.C. 1993),

---

[32] *United States v. Fort Benning Rifle & Pistol Club*, 387 F.2d 884, 886-887 (5th Cir. 1967).

a tortfeasor's insurer filed an interpleader action with regard to insurance policy proceeds claimed by both the United States and an injured Secret Service officer. The United States District Court for the District of Columbia, ruled for the United States, allowing it to recover the full amount expended on the officer's medical care, and granting only the remainder of the fund to the officer. The Officer appealed. The Court of Appeals held (in part) that since the FMCRA was silent as to priority of the government's right to recover medical expenses and the injured officer's right to recover nonmedical damages from the fund, and since "equity is equality," the fund should be distributed on a prorata basis, such that each claimant received a share of the fund proportionate to its share of the total judgment figure.

The court in *Commercial Union* reasoned that, in an interpleader where an insurer with limited contractual liability is exposed to claims that exceed that limit, the remedy draws on equitable principles and common sense: "An interpleader in this situation will presumably result in the distribution of the limited fund by the interpleader court on some sort of ratable basis." Dan B. Dobbs, The Law of Remedies § 2.12, at 130 (1973). Specifically, the court will give each claimant "a share of the fund proportionate to [his] share of the total judgment figure." *Id.; see also* Wright, Miller & Kane, FP & P § 1702, at 497, § 1705, at 513-14. *Cf. State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 533-34, 87 S.Ct. 1199, 1205, 18 L.Ed.2d 270 (1967) (stating that interpleader may be used to establish "orderly contest" for the limited fund so as to prevent early claimants from securing a "disproportionate slice"). The court held that, since the FMCRA is silent on the question of priority, and as "equity is equality," the proper course was to distribute the limited fund on a ratable basis, such that each claimant receives "a share of the fund proportionate to their share of the total

judgment figure."[33]

Additionally, the court notes that, pursuant to the statute, the United States is entitled to receive "the reasonable value of the care and treatment so provided."[34]  The United States has not introduced any competent summary judgment evidence establishing "the reasonable value" of the services provided.

Having considered the arguments of both parties and existing jurisprudence, this court finds that the "Made Whole" doctrine is not applicable to the FMCRA.  At the very least, the United States is entitled to recovery of a prorata share of the reasonable value of medical costs and the $329.16 in lost wages paid by the United States.  There is no genuine issue of material fact that the United States is entitled to reimbursement of these expenditures.  There is a genuine issue of material fact as to the exact figure of the amount owed.

For these reasons, the Motion for Summary Judgment by USAA will be DENIED.  The Motion for Summary Judgment by the United States will be GRANTED IN PART and DENIED IN PART.  The motion is granted to the extent that the United States is entitled to recovery of a prorata share of the reasonable value of medical costs and the $329.16 in lost wages paid, plus legal interest and attorneys fees. The motion is DENIED to the extent that the United States is claiming the balance of the $35,000 in settlement proceeds over the proven amounts above.

Lake Charles, Louisiana, this ___ day of July, 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[33]  Dobbs, The Law of Remedies § 2.12, at 130; *Commercial Union Ins. Co.* At 589.

[34]  42 U.S.C. § 2651 (a).

16